**United States District Court**
For the Northern District of California

1

2

3

4                                                            **E-FILED on**    9/29/09

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   MATTHEW R. NORRIS,                    No. C-07-04167 RMW

13              Plaintiff,

14        v.                              ORDER DENYING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT AND
15   MICHAEL J. ASTRUE,                    GRANTING DEFENDANT'S CROSS-
     Commissioner of Social Security,     MOTION FOR SUMMARY JUDGMENT
16
              Defendant.                   **[Re Docket Nos. 16, 17]**
17

18

19

20        Plaintiff Matthew R. Norris ("Norris") brings this action pursuant to 42 U.S.C. §§ 405(g),

21   1383(c)(3) for judicial review of a final decision by the defendant Commissioner of Social Security

22   (the "Commissioner") denying Norris' claims for disability insurance benefits and Supplemental

23   Security Income payments under the Social Security Act.  Specifically, Norris seeks review of the

24   final decision finding him "not disabled" at step five of the sequential evaluation process.  Norris

25   raises three issues in this appeal: 1) whether the ALJ erred in determining Norris' residual functional

26   capacity for "light" work by failing to evaluate properly and articulate sufficiently his evaluation of

27   Norris' chronic pain syndrome; 2) whether the ALJ erred in failing to obtain vocational expert

28

**United States District Court**
For the Northern District of California

1   testimony in a case involving significant non-exertional limitations such as pain; and 3) whether the

2   ALJ erred in rejecting Norris' subjective symptom testimony as not entirely credible.  Norris seeks a

3   remand for payment of benefits, or alternatively, a remand for further administrative proceedings.

4        The matter is now presented before the court on the parties' cross-motions for summary

5   judgment.  Having considered the papers submitted by the parties and the administrative record of

6   proceedings before the agency, the court denies Norris' motion for summary judgment and grants the

7   Commissioner's cross-motion for summary judgment.

8                                    **I.  BACKGROUND**

9        **A.  Procedural History**

10       Norris filed his application for Social Security Disability Insurance Benefits on March 31,

11  2005, alleging that he became "disabled" on July 29, 2004.  Administrative Transcript ("TR") 53, 13-

12  23.  Following the denial of his claim, initially and on reconsideration, Norris timely requested a

13  hearing. The hearing was held on November 13, 2006 before Administrative Law Judge ("ALJ")

14  Frederick C. Michaud.  TR 223-242.  The ALJ issued an unfavorable decision on November 22,

15  2006, finding that Norris was not disabled because he could perform work existing in significant

16  numbers in the national economy.  TR 13-23.  Norris requested a review of the ALJ's decision; the

17  Appeals Council denied the request finding no reason for review.  TR 5-7.  Consequently, the ALJ's

18  decision became the Commissioner's final decision.

19       **B.  Norris' Age, Educational, and Vocational History**

20       Norris, born on May 14, 1978, is currently 30 years old.  He completed high school and has

21  no further formal education or training.  TR 70.  Norris worked as a front desk clerk and waiter.  TR

22  65.

23       **C.  Norris' Medical History**

24       Norris was involved in an automobile accident on July 29, 2004.  TR 155.  The accident

25  resulted in low back pain and lower extremity pain.  Norris sought treatment from Drs. Elizabeth

26  Vilardo, an internist, and Rajan Perkash.

27       The medical records reveal repeated instances where Norris sought examination and

28  treatment for back pain.  Urgent Care records from August 2004 show diffusely tender back and

**United States District Court**
For the Northern District of California

paraspinous muscle spasms at L4-5. TR. 155. Dr. Vilardo's treatment notes document pain to palpation of upper back muscles and decreased bending due to pain. TR 157. Dr. Vilardo's notes also document Norris' feelings of depression related to increased pain. Id. Norris was diagnosed with panic attacks and panic disorder (TR 143) and was prescribed Zoloft for depression and panic attacks. TR 137.

Norris sought physical therapy for the treatment of pain. Evaluation notes from September 7, 2004 show decreased lumbar active range of motion in all planes, increased thoracic kyphosis and lumbar lordosis, tightness thoracic and lumbar paraspinals, tenderness to palpation of thoracic and lumbar spine, stiffness of the thoracic spine, and weak abdominal/trunk stabilizers. TR 156.

Dr. Vilardo's progress reports from September 15, 2004 revealed tight muscles, pain with straight leg-raising which seems to be a muscle spasm, and inability to flex or rotate his hip. TR 144. Dr. Vilardo's assessment provides: "Patient with back pain after a motor vehicle accident with a lot of spasms and muscle tightness. He is getting physical therapy ... because he is really quite disabled and has been such for over two months since his accident, which seems like a bit much." TR 144. Dr. Vilardo referred Norris to Dr. Perkash, who is board certified in Physical Medicine and Rehabilitation. TR 146.

An MRI of the lumbar spine revealed mild degenerative disc and bone changes in the lower lumbar spine. TR 154.

In January 2005, Dr. Perkash noted decreased range of motion with low back pain on all planes and tenderness to palpation along the L3-4, L5-4 and L5-S1 spinous processes, as well as the lower lumbar paraspinal muscles bilaterally. TR 145. He also noted positive straight leg-raising. TR 145. Dr. Perkash's impression was probable discogenic pain into the right lower lumbar spine. TR 145.

On April 14, 2005, Dr. Perkash noted a decreased range of motion on the lumbar spine and positive straight-leg raising test in the seated position. TR 141. His impression was probable internal disk derangement. TR 142.

A June 13, 2005 radiology report noted conditions consistent with Grade I spondylolisthesis L5-S1 with probable bilateral spondylolysis changes at L5. TR 139.

1    On June 14, 2005, Dr. Perkash reported findings of mild decrease in lumbar lordosis,

2 decreased range of motion with low back pain, and tenderness to palpation, and reported the

3 following impressions:

> The patient is a 27-year old male smoker with a prior history of low back pain, status
> post a motor vehicle accident on 7/9/04, with radiographic evidence for mild L4-5
> and LF-S1 lumbar disk bulges (MRI scan of the lumbar spine on 11/4/04), with
> persistent pain right, greater than left, mechanical/discogenic low back pain.  He has
> failed aggressive conservative treatment, including lumbar epidural steroid injections
> as well as lower lumbar facet injections.  In all likelihood, he is experiencing
> discogenic low back pain as a result of internal disk derangement from one or more
> levels.  I do believe that there is a significant component of depression as well as
> substance abuse involved in this patient.

9 TR 137-38.

10    On July 25, 2005, Dr. Annu Navani of the Bay Area Pain Center evaluated Norris at the

11 request of Dr. Perkash.  Her examination noted "Range of motion of the lumbar spine limited in

12 flexion, extension, lateral rotation and lateral bending, but increased pain in all planes.  The patient

13 magnifies significant pain behaviors during the history and physical examination."  TR 160.  After

14 examination, Dr. Navani diagnosed lumbar degenerative disc disease and lumbar myofascial pain

15 syndrome.  TR 161.  Her proposed plan includes addressing Norris' pain "in a multidisciplinary

16 fashion incorporating physical therapy and psychological counseling."  TR 161.  Dr. Navani referred

17 Norris to Kimeron Hardin, a pain psychologist, because she believed Norris "will need intense one-

18 on-one counseling with a pain psychologist for appropriate insight as well as coping strategies that

19 will steer him away from opioids and other habit-forming medications and also dysfunctional

20 behavior and redirect him to improved functionality and a more gainful life."  TR 161.

21    On August 7, 2005, Norris underwent a consultative evaluation by Dr. L. Neena Madireddi,

22 board certified in Physical Medicine and Rehabilitation Orthopaedics.  TR 162.  Dr. Madireddi's

23 impression was that Norris suffered from chronic lumbar pain, with intermittent right lower

24 extremity numbness.  TR 163.  She states that:

> In my opinion, this claimant's subjective complaints seem to outweigh his objective
> findings.  However, I recommend reviewing his lumbar MRI scan to determine if he
> indeed has the herniated disc that he claims, and to determine the severity of the
> herniated disc.  In my opinion, this claimant should be able to lift and carry 25 lbs.
> occasionally, and 10 lbs frequently.  He should avoid repetitive stooping, crouching,
> crawling activities given the pain in the spine.  No restrictions in kneeling, climbing
> steps or balancing.  No restrictions in the upper extremities.

United States District Court
For the Northern District of California

1  TR 163.  She also noted, however, that Norris had declined to perform several tests during the

2  examination.  TR 163.

3      On August 19, 2005, Norris underwent a psychiatric evaluation by Dr. Acenas, board

4  certified in Psychiatry.  Dr. Acenas' report contains the following functional assessment:

> The claimant is capable of managing his funds.  He has basic mathematical skills.  he
> is able to perform simple and repetitive tasks as well a accept instructions from
> supervisors.  Based upon his mental capabilities and not considering physical factors,
> claimant would be able to perform work activities on a consistent basis as well as
> maintain regular attendance and finish a normal workweek.  He would likewise also
> be able to deal with the usual stress encountered in a competitive workplace.

TR 166.

### D.  Norris' Hearing Testimony

Norris testified that he injured his lower back in a car accident in July of 2004.  TR 230.  He

testified further that he is "in constant pain" and that "the more that I move, the more it hurts."  TR

230.  Any type of movement aggravates the pain.  Id.  The severity of the pain fluctuates from five

to eight on the high end, on a scale of one to ten.  TR 230.  The "constant pain" is at a level of five or

six.  TR 231.

The pain radiates down his right leg, in which he also experiences numbness and loss of

sensation.  TR 231.  The numbness is not constant, however, but he experiences it three or four

times per week.  TR 231.  He  has sought treatment from Dr. Vilardo since shortly after the accident

in 2004.  TR 231.

At the time of the hearing, Norris was taking several prescription medications: Norco,

Trazodone and Lyrica.  TR 232.  Norris also received other treatment for pain, including epidurals.

TR 232.  He noted some improvement: "For about a week afterwards my back was feeling better

than it was but it was still in pain and it didn't really change anything."  TR 232.

With regard to how movement aggravates his pain, Norris testified that he is unable to walk

around the block in comfort, although he tries to do it on a daily basis. TR 232.  He testified further

that he can usually go about half a block before he starts feeling pain.  TR 233.

With regarding to his ability to stand, Norris was asked how long he was able to stand before

needing to take a break or sit down. Norris testified that "[i]f I am not moving and I'm just standing,

1  standing up, probably 10 or 15 minutes.  My upper back plays a part in that too." TR 234.  He

2  described the sensation as if "somebody took their thumb and pushed in hard on where my upper

3  back comes out the most of the disc that comes out the most. ... If somebody were to press their

4  thumb in, I feel like numb where the thumbprint would be and around that is painful." TR 234.

5       With regard to sitting, Norris testified that he could probably sit for 20 minutes or so, without

6  the need to get up or move around, if he had armrests, but that without armrests the pain "comes on a

7  lot quicker."  TR 235.

8       Norris further testified that the pain has affected his sleep and that he gets approximately two

9  hours of sleep before the pain wakes him up.  He spends over half the day lying down on his side or

10  lying down in bed.  TR 236.

11      Norris testified that he has some difficulty with driving, specifically with his back when he

12  has to look over his shoulder before changing lanes or when backing up.  TR. 239.  The longest that

13  he has driven within the previous year was about 30-45 minutes.  TR 239.

14      Although he used to play pool, he no longer plays as a result of his pain, testifying that

15  "every time I've started I can only last about five to ten minutes and I have to stop....  The pain just

16  builds up and then I just am not enjoying it or anything anymore."  TR 240.

17      Regarding his other symptoms, Norris testified that he had not had a very serious panic

18  attack in a while, but still has anxiety during the day.  TR 236.  He also testified that he has

19  difficulty concentrating and is unable to read a book without his mind wandering.  TR 237.  He was

20  unable to complete college classes because he was unable to pay attention as much as was necessary.

21  TR 237.

22      The record also contains a "Function Report" submitted by Norris to the Agency, attesting to

23  the following:

24   •  Norris is in constant pain.  TR 78.

25   •  He requires assistance with sweeping, mopping and loading the dishwasher, and moving

26      anything over a couple of pounds at times creates problems for him.  TR 83.

27   •  He lies down after finishing his chores.  TR 73.

28   •  Pain wakes Norris from sleep.  TR 74.

- In describing the changes in his social activities since his injury, Norris reported that "I hardly see my pool friends outside of the nighorhood [sic "neighborhood"], no traveling, no hiking, no running, no working, not good sleep." TR 78.

- Norris socializes with friends on good days.  TR 82.

- Driving is limited to 30 minutes at most.  TR 82.

- Norris' household chores include cleaning counter tops and organizing his clothing and bedding, which take him approximately 30 minutes to accomplish, every other day.  TR 75.  While he does not need help to perform these chores, Norris explained that he does not do other house or yard work because "most work I can't do because of pain." TR 76.

- Twice a month, Norris goes to friend's houses "to enjoy a movie" or has friends visit him.  TR 77.

**E.  The ALJ's Five-Step Sequential Evaluation Decision**

The ALJ found Norris to be "not disabled" at the fifth step of the disability determination process.

At step one, the ALJ found that Norris has not engaged in substantial gainful activity since the alleged onset date of disability.  TR 18.  At step two, the ALJ found that Norris has a severe impairment, specifically "a back disorder." TR 18.  The ALJ further noted that Norris "has a history of drug abuse which is not material to the determination of disability."  *Id.*  At step three, the ALJ determined that Norris did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  TR 18.

Prior to step four, the ALJ determined that Norris has a residual functional capacity ("RFC") to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday" and that "he has the mental ability to perform simple, repetitive tasks." TR 21.  This corresponds to an ability to perform work at the "light" exertional level.  20 C.F.R. § 404.1567(b).  In reaching this RFC determination, the ALJ found that Norris' statements concerning the intensity, persistence and limiting effects of his subjective symptoms "are not entirely credible." TR 21.  Specifically, the ALJ found:

United States District Court
For the Northern District of California

1

2

3

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

4

5

6

7

8

9

10

The claimant testified to an inability to work due to debilitating back pain, lower extremity pain, anxiety, panic attacks, agoraphobia, and concentration problems. He testified he was able to stand for only 10 to 15 minutes; sit for only 20 to 25 minutes and walk ½ to 1 block. He also testified to difficulty bending over and even putting on his socks. The objective medical findings and the level of treatment, however, are not suggestive of this level of severity. In the absence of objective medical evidence to support these allegations, the ALJ gives minimal weight to this testimony. The claimant's complaints regarding the frequency, severity and duration of his back pain and lower extremity pain do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found. The claimant has not sought treatment from a mental health specialist. It is reasonable to assume if the claimant's mental impairments were as severe as he alleges, he would have sought such treatment. There are no reported continuous side effects of medication. When side effects are mentioned, the treatment notes reflect that the medication was adjusted or changed.

11

12

13

Of note, Dr. Madireddi opined the claimant's subjective complaints seemed to outweigh his objective findings (Exhibit 3F). This detracts from the claimant's credibility. In addition, the records contain numerous references to drug seeking behavior and drug abuse which also detracts from the claimant's credibility.

14   TR 21-22.

15       At step four, the ALJ determined that Norris is unable to perform any past relevant work as a

16   front desk clerk or waiter. TR 22. Finally, at step five, after considering Norris' age, education,

17   work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers

18   in the national economy that Norris can perform. TR 22. The ALJ relied upon the Medical-

19   Vocational Guidelines ("Grids") as a framework in making his determination, and based on the

20   Grids, found that Norris is not disabled. TR 22. The ALJ did not obtain testimony from a vocational

21   expert.

22                                   **II.  LEGAL STANDARD**

23       The court has the authority to review the Commissioner's decision denying Norris' benefits.

24   42 U.S.C. §405(g). Under section 405(g), the district court reviewing the Commissioner's decision

25   on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172,

26   1174 (9th Cir. 2000), *citing Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993). However, the

27   district court's scope of review is limited. The Commissioner's decision (here the decision of the

28   ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the

application of improper legal standards.  42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In this context, evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997).  To determine whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole and considers evidence both supporting and detracting from the Commissioner's conclusion.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe*, 108 F.3d at 980.

The claimant bears the burden of proving that he is disabled within the meaning of the Act. *Tackett*, 180 F.3d at 1098.  "Disability" is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §423(d)(1)(A).  A person is disabled only if his impairments are of such severity that he is not only unable to perform previous work, but that considering his age, education and work experience, cannot engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. §423(d)(2)(A).

The Commissioner is required to undertake a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  Norris has the burden of proof and persuasion with regard to steps one through four.  *Tackett*, 180 F.3d at 1098-99.  The Commissioner, however, bears the burden of establishing that there are jobs existing in sufficient numbers in the national economy that Norris can perform, given her residual functional capacity, age, education and work experience.  *Id*.

### III.  ANALYSIS

Norris contends that the ALJ made three errors: (1) in determining Norris' residual functional capacity for "light" work by failing to evaluate properly and to articulate sufficiently his evaluation of Norris' chronic pain syndrome; (2) in failing to obtain vocational expert testimony where the

1    claimant has significant non-exertional limitations, such as pain; and (3) in failing to make a bona

2    fide credibility finding when rejecting Norris' subjective symptom testimony.

3          **A.  Residual Functional Capacity Determination**

4          Norris first contends that the ALJ erred in determining Norris'  residual functional capacity

5    by failing to evaluate properly and to articulate sufficiently his evaluation of Norris' chronic pain

6    syndrome.  In this regard, Norris argues that the ALJ erred by "ignoring" the opinions of treating

7    physicians, Drs. Vilardo and Perkash; erred by relying upon the opinion of examining physician Dr.

8    Madireddi; and erred in failing to state specific and legitimate reasons to reject the opinions of Drs.

9    Vilardo and Perkash.

10         Norris' first argument is that the ALJ erred in his treatment of the opinions of Drs. Perkash

11   and Vilardo.  Norris contends that the ALJ "improperly dismissed" the reports of Norris' treating

12   physicians which "clearly demonstrate Norris' long history of chronic pain, and clearly articulate

13   their opinions that such pain limits his ability to engage in work activity."  Norris' Motion at 10.

14   Norris contends that the ALJ failed to consider how Norris' chronic pain would interfere with

15   performing sustained work activity at any exertion level.  Motion at 10-11.  Norris also asserts that

16   the ALJ erred in "ignoring" the opinions of treating Drs. Perkash and Vilardo, opinions that he was

17   required to consider under SSR 96-5p.  Motion at 11-12.

18         As a preliminary matter, Norris significantly mis-states the physicians' medical opinions as

19   reflected in the record – while the medical records are replete with evidence of Norris' pain, the

20   treating physicians did not offer an opinion that Norris was not capable of working due to chronic

21   pain nor unable to stand for prolonged periods.  Dr. Perkash noted in November 2004 that Norris

22   "works as a front desk clerk at a hotel, and I do not believe he will be able to do the prolonged

23   standing, repetitive bending, or lifting activities involved in his job" (TR 150) and made

24   substantially the same comment in January 4, 2005.  TR 148.  Six months later, in June 2005, Dr.

25   Perkash again noted Norris' chronic pain, and stated "I do not believe the patient is capable of

26   working at this time.  He has already been given an estimated return to work date of 8/1/05.  He

27   previously worked at the front desk as a clerk, and is unable to do prolonged standing activities."

28   TR 138.  These statements appear limited to Norris' then-current inability to resume the work of his

United States District Court
For the Northern District of California

1  ordinary job; they cannot be fairly read to be medical opinions that Norris is not capable of working

2  in any capacity.

3      Additionally, contrary to Norris' assertion, the ALJ did not ignore Dr. Vilardo and Dr.

4  Perkash's disability opinions.  Rather, he expressly noted those opinions, and then gave his reasons

5  for according them little weight:

6      It is noted that Dr. Vilardo and Dr. Perkash assessed the claimant was totally
       temporarily disabled during the adjudicative period.  The ALJ, however, gives
7      minimal weight to these assessments of disability, as they are simply not supported
       by the objective medical findings.  The treatment records document a mild decrease
8      in his lumbar lordosis; tenderness to palpation overlying the L3-4, L4-5, and L5-S1
       spinous processes, as well as the lower lumbar paraspinal muscles overlying the
9      lower lumbar facet joints bilaterally.  The records document a full range of motion of
       the lower and upper extremities but a reduced range of motion of the lumbar spine.
10     The claimant had normal motor strength of the upper and lower extremities without
       cyanosis, clubbing or edema.  The medical records reveal the claimant's course of
11     treatment includes, at various times, Seldane, Mobic, Vicodin, Piroxicam, Celebrex
       and Neurontin.  In addition, the claimant underwent a series of lumbar epidural
12     steroid injections and lower lumbar facet injections with temporary improvement.

13  TR 19-20.  The ALJ also discussed additional medical records, from August 2005 forward, including

14  the assessments by examining physician Madireddi regarding Norris' full range of motion, strength,

15  and ability to lift and carry.  TR 20-21.  Thus, contrary to Norris' assertion, the ALJ did not ignore

16  the opinions of Drs. Perkash and Vilardo.  He expressly noted those opinions, and then pointed to

17  specific evidence in the record to explain why he was giving such conclusions little weight.

18      The Commissioner properly notes that the doctors' assessment that Norris was "disabled" at

19  the time of their examinations does not necessarily equate to the definition of "disabled" under the

20  Act, i.e., that such an opinion is not equivalent to a finding that Norris was unable to engage in any

21  substantial gainful work that exists in the national economy for a continuous period of not less than

22  one year.  42 U.S.C. §423(d)(2)(A).  Norris concedes, as he must, that the ultimate question of

23  disability is reserved to the Commissioner.  Motion at 12.  The ALJ was not obligated to accept such

24  a conclusion, even by a treating physician, if it were controverted by another source.  In this case,

25  the ALJ's review of the medical record, in addition to the report of Dr. Madireddi, provided specific,

26  legitimate reasons based on substantial evidence in the record, to give little weight to Drs. Perkash

27  and Vilardo's "disability" opinions.

28

United States District Court
For the Northern District of California

1    An ALJ may reject the physicians' opinion on the ultimate issue, but cannot do so without

2    presenting clear and convincing reasons for doing so.  *Montijo v. Secretary of Health and Human*

3    *Servs*., 729 F.2d 599, 601 (9th Cir. 1984).  The issue is thus whether the ALJ's stated reasons are

4    clear and convincing.  They are.  An ALJ may properly reject the opinion of a treating physician

5    when the physician's conclusions about the claimant's limitations are not supported by the

6    physician's own treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003).  Here,

7    the ALJ expressly cited to Dr. Vilardo's treatment records as the medical records which undermined

8    the basis for the disability opinions.  Morever, an examining physician's opinion based on

9    independent clinical findings may also constitute substantial evidence.  *Tonapetyan v. Halter*, 242

10   F.3d 1144, 1149 (9th Cir. 2001).  Here, based on her examination of Norris, Dr. Madireddi made

11   findings on Norris' ability to lift and carry, findings which are substantial evidence supporting the

12   ALJ's decision.

13               **B.  Failure to Obtain Vocational Expert Testimony at Step Five**

14   Norris' second argument is that the ALJ erred by not obtaining vocational expert testimony at

15   step five of the sequential evaluation process and in relying, instead, on the Medical-Vocational

16   Guidelines ("Grids") to determine that Norris was not disabled.  Norris argues that reference to the

17   Grids is only appropriate where the grids "completely and accurately" represent a claimant's

18   limitations."  Motion at 15, *citing Tackett*, 180 F.3d at 1101.  Norris also argues that the Grids are

19   inapplicable where a claimant has both exertional and non-exertional limitations, and in such

20   situations the ALJ must take the testimony of a vocational expert.  *Id.* at n.102, *citing Moore v.*

21   *Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).  Norris contends that the medical evidence indicates that

22   Norris' pain and other limitations sufficiently interfere with his functional capacity such that the ALJ

23   was precluded from relying on the Grids and instead was required to elicit testimony from the

24   vocational expert.  Motion at 15.

25   The Commissioner contends that the ALJ did not err in relying on the Grids.  An ALJ is only

26   required to obtain vocational expert testimony when there are "sufficiently severe" non-exertional

27   limitations that significantly limit the range of work otherwise permitted by a claimant's exertional

28   capacity, which are not accounted for by the Grids.  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir.

**United States District Court**
For the Northern District of California

1007).  The Commissioner argues that substantial evidence supports the ALJ's finding that Norris

retained the residual functional capacity to perform light work requiring simple, repetitive tasks and

that "[p]laintiff's mental impairments did not substantially erode his ability to perform the mental

demands of basic work."  Opp. at 12.  The Commissioner does not address Norris' claimed pain

limitations, presumably because he elsewhere argues that the ALJ properly discredited Norris'

subjective complaints.

The issue thus reduces to whether Norris' pain and other non-exertional limitations were

"sufficiently severe" so as to significantly limit the range of work permitted by his exertional

capacity.  As discussed below, the ALJ adequately addressed Norris' subjective complaints and

stated sufficient reasons for discrediting them.  Accordingly, the pain and other non-exertional

impairments were not sufficiently severe so as to have required the ALJ to have obtained the

testimony of a vocational expert.

**C.      Assessing Norris' Credibility**

Norris's final argument is that the ALJ failed to comply with the regulations and SSR 96-7p

when finding that Norris' testimony was not entirely credible.  Norris contends that the ALJ's

findings on Norris' credibility are inadequate and that he failed to consider various factors that he

was required to consider in assessing the credibility of the testimony regarding the severity of the

pain.  Specifically, the ALJ was required to consider the claimant's daily activities, pain medication,

other medical treatment, the location, duration, and frequency of the pain, measures taken to relieve

the pain, and other factors concerning functional limitations and restrictions.  Motion at 17, *citing* 20

C.F.R. §§ 404.1529(c)(3)(i)(-(vii); 416.929(c)(3)(1)-(vii).  Norris specifically contends that the ALJ

also failed to comply with SSR 96-7p, which imposes a duty on the ALJ to consider these specific

factors and make specific credibility findings.

The Commissioner, in turn, contends that the ALJ's credibility findings "contained

sufficiently specific, clear and convincing reasons based on substantial evidence, for finding Plaintiff

not fully credible."  Opp. at 7.  In addition to the ALJ's stated reasons, discussed below, the

Commissioner offers additional reasons supporting the ALJ's decision.  Specifically, the

Commissioner asserts that the ALJ reasonably considered the evidence of Plaintiff's inconsistent

United States District Court
For the Northern District of California

1   statements in determining credibility, and points to several areas where he contends the statements

2   were inconsistent.  Opp. at 7.  The Commissioner also argues that Norris's ability to perform a wide

3   range of daily activities, from caring for his personal needs, preparing simple meals, and performing

4   household chores and other daily activities, which he argues is consistent with the ALJ's finding that

5   Norris is not disabled.  *Id.* at 8.  The ALJ, however, did not base his credibility determination on

6   any inconsistent statements by Norris or upon Norris' daily activities as being inconsistent with the

7   claimed level of pain.  The court cannot affirm the ALJ on a ground that the agency did not invoke

8   in making its decision.  *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001); *SEC v. Chenery Co.*,

9   332 U.S. 194, 196 (1947).

10   In order to assess whether the ALJ made a proper credibility determination, the court must

11   review the reasons stated by the ALJ, under the applicable legal standard.

12   **1.  Standard for Assessing Subjective Symptoms of Pain**

13   Pain is a completely subjective phenomenon which cannot be objectively verified or

14   measured, and the level of pain caused by an impairment varies significantly among individuals

15   depending on their pain threshold and stamina.  *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.

16   1991) (en banc).  Accordingly, in a case involving subjective symptoms, such as claims of pain, the

17   ALJ must engage in a two-step analysis.  First, the claimant must produce objective medical

18   evidence of an underlying impairment or combination of impairments which could reasonably be

19   expected to produce pain or other symptoms alleged.  *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th

20   Cir. 1986); *Bunnell*, 947 F.2d at 343; *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). When

21   the claimant has done so, then absent evidence of malingering, the ALJ may reject the testimony

22   about the severity of the symptoms only by offering specific, clear and convincing reasons for doing

23   so.  *Smolen*, 80 F.3d at 1282; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The ALJ may not

24   reject the testimony regarding the severity of the symptoms simply because there is no showing that

25   the impairment can reasonably produce the <u>degree</u> of symptom alleged.  *Smolen*, 80 F.3d at 1282; 20

26   C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).  The ALJ may, however, consider the medical evidence

27   as well other factors, including a claimant's daily activities, the location, duration, frequency and

28   intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and

side effects of medication; treatment other than medication; measures used to relieve symptoms; and

functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; 20 C.F.R.

§404.1529(c)(3).

Although the ALJ is not required to accept a claimant's subjective testimony regarding the

severity and persistence of pain and other symptoms, the Ninth Circuit has repeatedly instructed that

> [i]f there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be "clear and convincing" and supported by specific findings. It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible. He must either accept [claimant's] testimony or make specific findings rejecting it.

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citations and quotations omitted). The

ALJ is "required to point to specific facts in the record which demonstrate that [claimant] is in less

pain than she claims." *Id.* "'General findings are insufficient; rather, the ALJ must identify what

testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1998), *quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1995). The Ninth Circuit has explained why the findings must be specific: the ALJ's "findings,

properly supported by the record, must be sufficiently specific to allow a reviewing court to

conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d 341 at 345-45

(internal quotation omitted).

### 2. The ALJ's Findings

The ALJ found that Norris' statements concerning the intensity, persistence and limiting

effects of his symptoms were "not entirely credible." TR 21. Specifically, the ALJ found:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

> The claimant testified to an inability to work due to debilitating back pain, lower extremity pain, anxiety, panic attacks, agoraphobia, and concentration problems. He testified he was able to stand for only 10 to 15 minutes; sit for only 20 to 25 minutes and walk ½ to 1 block. He also testified to difficulty bending over and even putting on his socks. The objective medical findings and the level of treatment, however, are not suggestive of this level of severity. In the absence of objective medical evidence

United States District Court
For the Northern District of California

1
2
3
4
5

to support these allegations, the ALJ gives minimal weight to this testimony.  The claimant's complaints regarding the frequency, severity and duration of his back pain and lower extremity pain do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found.  The claimant has not sought treatment from a mental health specialist.  It is reasonable to assume if the claimant's mental impairments were as severe as he alleges, he would have sought such treatment.  There are no reported continuous side effects of medication.  When side effects are mentioned, the treatment notes reflect that the medication was adjusted or changed.

6
7
8

Of note, Dr. Madireddi opined the claimant's subjective complaints seemed to outweigh his objective findings.  This detracts from the claimant's credibility.  In addition, the records contain numerous references to drug seeking behavior and drug abuse which also detracts from the claimant's credibility.

9

TR 21-22 (emphasis added, internal record citation omitted).   Each of the ALJ's stated reasons will

10

be addressed in turn, below.

11
12
13
14
15
16
17

First, the ALJ rejected Norris' testimony regarding the severity and effect of his symptoms because the "objective medical findings and the level of treatment ... are not suggestive of this level of severity."  The ALJ may not reject subjective symptom testimony solely because there is no showing that the impairment can reasonably produce the degree of symptom alleged.  *Smolen*, 80 F.3d at 1282.  But, the ALJ may consider inconsistencies between the claimant's testimony and the objective medical record.  *Morgan v. Comm'r Soc. Sec.* Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Here, the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged and thus did not err.

18
19
20
21
22
23
24
25
26
27

The ALJ's second stated reason for not crediting Norris' testimony is that his "complaints regarding the frequency, severity and duration of his back pain and lower extremity pain do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found."  The Ninth Circuit rejected similar findings as too vague to support a lack of credibility finding.  *Vasquez*, 547 F.3d at 1105.  Without a specific discussion of facts in the record to support a conclusion that the claimant's testimony was not credible, the assertion that the testimony is "not consistent with the objective medical record" and is "generally consistent with the limitations found" is insufficient.  Accordingly, the ALJ's second stated reason does not constitute a "specific, clear and convincing" reason for disregarding Norris' testimony.

28

United States District Court
For the Northern District of California

1    The third reason stated by the ALJ was that Norris "has not sought treatment from a mental

2    health specialist. It is reasonable to assume if the claimant's mental impairments were as severe as

3    he alleges, he would have sought such treatment." TR 21. An unexplained or inadequately

4    explained failure to seek treatment or to follow a prescribed course of treatment is factor which may

5    be properly considered by the ALJ in assessing credibility. *Smolen*, 80 F.3d at 1284. The record

6    reflects that Norris was referred to a pain psychologist (TR 161), but there is no indication that

7    Norris complied. Norris was subsequently evaluated a psychiatrist, Dr. Acenas, who noted that

8    Norris had not sought any form of psychiatric treatment and who diagnosed nothing about Norris'

9    mental health that would interfere with his working in a competitive workplace. TR 164-66. In

10   light of Dr. Acenas' assessment and Norris' failure to seek mental health treatment, this third stated

11   reason is a specific, clear and convincing reason for discrediting Norris' testimony.

12   The fourth reason stated by the ALJ is that "[t]here are no reported continuous side effects of

13   medication. When side effects are mentioned, the treatment notes reflect that the medication was

14   adjusted or changed." TR 21. The significance of the ALJ's stated reason is unclear; its logical

15   relation to a determination that Norris' testimony is not credible is also unclear. The <u>presence</u> of

16   continuous adverse side effects may provide a logical explanation for why a claimant did not follow

17   a prescribed course of treatment, but the <u>absence</u> of continuous side effects has no logical bearing on

18   the credibility of a claimant's testimony regarding his pain. Thus, while it is appropriate to consider

19   the side effects of medication, 20 C.F.R.§§ 404.1529(c)(3); 416.929(c)(3); SSR 96-7p, it is not clear

20   how this factor, in and of itself, constitutes a specific, clear and convincing reason justifying

21   discrediting Norris' testimony.

22   The ALJ's fifth justification for discrediting Norris's testimony is that Dr. Madireddi opined

23   the claimant's subjective complaints seemed to outweigh his objective findings, which, in the eyes of

24   the ALJ, "detracts from the claimant's credibility." TR 21. An ALJ may rely on the opinion of an

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT; No. C-07-04167 RMW
TER                                                    17

United States District Court
For the Northern District of California

1    examining physician, and there was no error in doing so here. This is a specific, clear and

2    convincing reason justifying discrediting Norris' testimony.[1]

3        Finally, the ALJ notes that "the records contain numerous references to drug seeking

4    behavior and drug abuse which also detracts from the claimant's credibility." TR 21-22. The ALJ

5    did not specify what the "drug seeking behavior" was, nor did he specify the evidence of "drug

6    abuse" which would affect Norris' credibility. His earlier findings took note of references in the

7    medical record that Norris had over-used Vicodin [TR 19 and 20] and had sought to resume Vicodin

8    after experiencing drowsiness with the alternate medication (Methadone). TR 20. The ALJ also had

9    referenced Dr. Perkash's observation of "drug seeking behavior" [TR 19] and cited to the June 14,

10   2005 medical records in which Dr. Perkash noted that Norris had been requesting Vicodin from

11   multiple physicians. TR 138. Such behavior could support a finding of significant pain, rather than

12   detract from the credibility of the claimant. *See Vertigan*, 260 F.3d at 1050 (noting that claimant's

13   "constant quest for medical treatment and pain relief" refuted the ALJ's finding that claimant lacked

14   credibility about her pain and physical limitations). The evidence, however, also tends to support an

15   inference that Norris' complaints of pain were exaggerated. *See Edlund v. Massanari*, 253 F.3d

16   1152, 1157-58 (9th Cir. 2001). The ALJ's inference was reasonable, and will not be second-guessed.

17   *Burch*, 400 F.3d at 679.

18       The ALJ stated several specific reasons supported by substantial evidence to justify his

19   credibility determination. Even if some of the ALJ's stated reasons were not supported by

20   substantial evidence, others were sufficient, and any error made by the ALJ in this regard was

21   harmless. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).

22                                   **IV. ORDER**

23       For the foregoing reasons, Norris' motion for summary judgment is denied and the

24   Commissioner's cross-motion for summary judgment is granted.

25                                   *Ronald M. Whyte*

26

27   _____

     [1] Although not expressly noted by the ALJ, Dr. Madireddi's opinion is also corroborated by other
     medical sources, such as Dr. Navani who noted that "[t]he patient magnifies significant pain
28   behaviors during the history and physical examination." TR 160.

1

2   DATED:         9/29/09

                                           RONALD M. WHYTE

3                                         United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff:**

3

Betty Herrera                    betty@sackettlaw.com
Harvey Peter Sackett             hps@hpspc.com

4

**Counsel for Defendant:**

5

Jacqueline Forslund              jacquiline.a.forslund@ssa.gov

6

Counsel are responsible for distributing copies of this document to co-counsel that have not

7

registered for e-filing under the court's CM/ECF program.

8

9

**Dated:**    9/29/09                              TER
                                        **Chambers of Judge Whyte**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT; No. C-07-04167 RMW
TER                                              20